# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| APRIL J. MICHLES, | ) No. EDCV 16-2385 AS |
| Plaintiff, | ) **MEMORANDUM OPINION AND** |
| v. | ) **ORDER OF REMAND** |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED that this matter is remanded for further administrative action consistent with this Opinion.

## I. PROCEEDINGS

On August 28, 2008, Plaintiff April J. Michles ("Plaintiff") applied for social security benefits alleging a disabling condition

---

[1] Nancy A. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin. See Fed. R. Civ. P. 25(d).

beginning August 16, 2004. (Certified Administrative Record ("AR") 220, 252). An Administrative Law Judge ("ALJ") reviewed Plaintiff's application, conducted a hearing, and issued an unfavorable decision on December 3, 2010. (AR 105-17). Plaintiff requested review before the Appeals Council, which granted the request and remanded the matter for further consideration. (AR 123-24). A second ALJ conducted an additional hearing and issued an unfavorable decision on November 2, 2012. (AR 11-21). Plaintiff ultimately requested that this Court review the second ALJ's decision and, on September 2, 2015, this Court reversed the second ALJ's decision in part and remanded this matter for further proceedings. (See AR 942-59).

On May 27, 2016, ALJ Kenneth E. Ball ("ALJ Ball") conducted a third hearing on Plaintiff's application for disability benefits. (AR 877-907). During the hearing, ALJ Ball confirmed that he had not previously been involved in Plaintiff's case and that he would make a new decision without being bound by any prior decision. (AR 879). Plaintiff testified with the assistance of counsel, and vocational expert David Rinehart also testified. (AR 877). On July 27, 2016, ALJ Ball issued a decision ruling that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 854-70). Plaintiff did not request that the Appeals Council review ALJ Ball's decision, which became the final decision of the Commissioner in September 2016. See 20 C.F.R. § 404.968 (prescribing sixty-day period to request Appeals Council review).

On November 18, 2016, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 405(g) alleging that the Social Security Administration

erred in denying benefits. (Docket Entry No. 1). On April 13, 2017, Defendant filed an Answer to the Complaint, (Docket Entry No. 14), and the Certified Administrative Record, (Docket Entry No. 15). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 9, 11). On July 12, 2017, the parties filed a Joint Stipulation setting forth their respective positions on Plaintiff's claims.[2]

## II. SUMMARY OF ALJ'S DECISION

ALJ Ball applied the five-step process in evaluating Plaintiff's case. (AR 855-56). At step one, ALJ Ball determined that Plaintiff had not engaged in substantial gainful activity between her alleged onset date and date last insured. (AR 856). At step two, ALJ Ball found that Plaintiff's severe impairments included degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine; irritable bowel syndrome; anxiety; and depression. (AR 856). At step three, ALJ Ball found that Plaintiff's impairments did not meet or equal a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 857-58).

---

[2] Because the parties use incompatible word processing systems, the Joint Stipulation was filed as two separately paginated documents, one by Plaintiff, ("P. Joint Stip.," Docket Entry No. 16), and one by Defendant, ("D. Joint Stip.," Docket Entry No. 16-1).

3

Before proceeding to step four, ALJ Ball found that Plaintiff had the residual functional capacity ("RFC") to perform light work[3] with the following limitations:

> lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for six hours out of an eight-hour workday with regular breaks with the requirement to change positions briefly for one to three minutes each hour; sit without limitation during an eight-hour workday with regular breaks; push and pull within the weight limits indicated for lifting and carrying; reach overhead occasionally bilaterally; perform all postural activities occasionally; must work within 100-yards distance from a bathroom; no work requiring a high-quota production-rate pace, such as rapid assembly line work; must avoid exposure to unprotected heights and moving mechanical parts of equipment, tools, or machinery; understand, remember, and carry out instructions to perform tasks that are simple, routine, and repetitive and require only simple work-related decisions; have only occasional contact with the public involving only brief interactions for exchanges of simple information; have occasional interaction with coworkers; and no other exertional or nonexertional limitations.

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

4

(AR 858).

In assessing Plaintiff's RFC, ALJ Ball ruled that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of her symptoms were not "entirely consistent" with the medical evidence and other evidence of record. (AR 861). ALJ Ball also assigned "partial weight" to the statements in third-party Adult Function Reports completed by Plaintiff's husband. (Id.). ALJ Ball discussed and assigned weight to medical opinions and assessments by various physicians. (AR 860-68).

At step four, ALJ Ball determined that Plaintiff could not return to her past relevant work. (AR 868). ALJ Ball ruled, however, that Plaintiff could adjust to other work existing in significant numbers in the national economy. (AR 869-70). Accordingly, ALJ Ball determined that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 870).

**III. STANDARD OF REVIEW**

This Court reviews the Administration's decision to determine if the decision is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding,

"a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

## IV. PLAINTIFF'S CONTENTIONS

Plaintiff raises two grounds for relief. First, Plaintiff argues that ALJ Ball erred evaluating the medical evidence, particularly in assigning weight to the opinions of treating physicians. (P. Joint Stip. at 5-11). Second, Plaintiff maintains that ALJ Ball improperly considered Plaintiff's subjective complaints and the statements made by Plaintiff's husband. (Id. at 5, 11-18).

## V. DISCUSSION

After reviewing the record, the Court finds that Plaintiff's second claim warrants remand for further consideration. The Court declines to address Plaintiff's other claim.

**A. ALJ Ball Improperly Analyzed Plaintiff's Subjective Complaints And The Statements Made By Plaintiff's Husband**

With respect to Plaintiff's statements, a claimant initially must produce objective medical evidence establishing a medical

6

impairment reasonably likely to be the cause of her subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms alleged, and the ALJ does not find that the claimant is malingering, the ALJ may reject the claimant's testimony regarding the severity of her pain and symptoms only by articulating specific, clear and convincing reasons for doing so. Brown-Hunter v. Colvin, 806 F.3d 487, 492-93 (9th Cir. 2015) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)).

The ALJ cannot reject the claimant's testimony due solely to a lack of objective medical evidence supporting it. Light v. Soc. Sec. Admin., 119 F.3d 789, 792-93 (9th Cir. 1997) ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain."). Instead, "[t]o find the claimant not credible the ALJ must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between his testimony and his own conduct, or on internal contradictions in that testimony." Id. at 792.

Plaintiff testified at three separate hearings, each before a different ALJ, and she also provided written questionnaire responses. All of her statements concern the same relevant period, between her

alleged onset date of August 16, 2004, and her last insured date of March 31, 2010.[4]

During Plaintiff's first ALJ hearing in October 2010, Plaintiff testified that she has tried acupuncture, injections, "Lexapro patches,"[5] "strong medications," and hot baths to treat her pain and impairments. (AR 84-86). She stated she has difficulty sleeping due to pain and nightmares. (AR 86). Sometimes, during a normal day, according to Plaintiff, she "tr[ies] to fix . . . something to eat," tries to rinse dishes, and "start[s] a load of laundry," often taking breaks to sit. (AR 86-87). She dresses herself "most of the time" but cannot put on most shoes without assistance because she cannot bend over. (AR 90).

During the second ALJ hearing in September 2012, Plaintiff testified further about her typical activities, noting that she washes her own hair once a week with some difficulty and that she showers without assistance but requires help to get out of a bath. (AR 38, 45). She stated that she "sometimes" sweeps, and she does some dishes, though her husband loads the dishwasher. (AR 45, 46). She stated that she prepares cereal. (AR 45). In addition, she drives to the grocery store once a week, spending about fifteen to twenty minutes there, and she sometimes drives herself to medical

---

[4] The Court generally uses the present tense to describe Plaintiff's statements except when comparing Plaintiff's statements at different times.

[5] Lexapro is an antidepressant used to treat anxiety and depressive disorder. <u>Deskins v. Comm'r</u>, 2016 WL 4409340 at *7 n.8 (M.D. Fla. 2016).

8

appointments. (AR 38, 46). She also drives herself to a hairdresser once a month (AR 38). She testified, moreover, that she goes to church two or three times a month and attends a women's bible study group about once a month. (AR 46-48). About four months before the hearing, moreover, she began volunteering twice monthly for a church program in which she monitors children for about an hour while they make crafts. (AR 44-45). Although she experiences stress around people, Plaintiff attends church and bible study because these events are "safe haven[s], because [she] know[s] that they're not out there to hurt [her]." (AR 59-60). Plaintiff spends a few "bad days" every week lying down, but most of the time she alternates sitting and standing. (AR 62-63). She can stand or sit for about fifteen to twenty minutes before changing positions. (AR 49-50).

At the hearing before ALJ Ball on May 27, 2016, Plaintiff testified that her pain and fatigue levels were the same as they were during earlier hearings. (AR 891, 897). She stated that she suffers from pain in her "[n]eck, back, middle back, lower back, right knee, right wrist," and right shoulder. (AR 890-91). To ease her pain, she sits down and "recline[s]" with pillows behind her, although she "get[s] up more" and lies down less than she used to because lying down is "more painful." (AR 892-93). She goes to a chiropractor twice a week and takes a two-hour bath almost every day. (AR 893). She also noted that she is "on the list" for breast reduction surgery to ease her back pain. (AR 891). She stated that she has a cane but tries not to use it because she wants to be "independent." (AR 899). Plaintiff testified, moreover, that she has "issues" with irritable bowel syndrome, and she has migraine headaches once a week. (AR 896-

9

97). She also noted that she sometimes has difficulty finishing sentences. (AR 896). Elaborating about how she "tr[ies]" to perform household chores, Plaintiff testified that about once a week, she sets a chair next to her washing machine and puts a load in, although she "might not go back and finish it." (AR 894). She stated that her husband carries the laundry "upstairs" and also helps her do her hair. (AR 894-95).

Plaintiff completed a Pain Questionnaire in September 2008. (AR 267-69). She reported, inter alia, that during a normal day she tries to stand up, take a hot bath, "eat something," lie down on the couch for three hours, do dishes, lie down again, put in a load of laundry, lie down again, dress herself, make the bed, finish the dishes, and lie down again. (AR 268). She wrote that she tries to go to the grocery store once a week. (AR 268). Driving and shopping are "issue[s]," she noted, and she is unable to perform many chores. (AR 268). She also noted that she cannot maintain her composure when asked questions. (Id.) During the same month, Plaintiff completed an Adult Function Report that is generally consistent with her allegations in the Pain Questionnaire. (AR 270-77). In March 2009, Plaintiff gave substantively identical answers on another Pain Questionnaire and Adult Function Report. (AR 297-308).

In the following excerpt of the decision, ALJ Ball discredited Plaintiff's statements finding them to be inconsistent with her daily activities and the medical evidence:

I considered all of [Plaintiff's] subjective complaints, including statements from the administrative hearings, disability reports, and function reports. At the administrative hearings, [Plaintiff] testified she was so limited that she required assistance with the performance of even light tasks, like washing dishes. She also described needing to lie down for several hours each day due to pain.

The undersigned finds that [Plaintiff's] activities of daily living are inconsistent with [Plaintiff's] statements concerning the alleged intensity, persistence, and limiting effects of symptoms. [Plaintiff] was able to drive, shop in stores, handle funds, and prepare meals throughout the period at issue. In addition, [Plaintiff] was able to attend weekly church and bible study sessions despite her allegations of debilitating anxiety. Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. [Plaintiff's] ability to participate in such activities is inconsistent with [Plaintiff's] statements concerning the alleged intensity, persistence, and limiting effects of symptoms.

The objective medical evidence does not support [Plaintiff's] alleged symptoms and limiting effects of

11

debilitating pain, headaches, and irritable bowel syndrome. [. . .]

Concerning [Plaintiff's] mental limitations, despite [Plaintiff's] allegations of debilitating anxiety and depression, the evidence demonstrates no more than moderate limitation in any domain of functioning related to mental health symptoms. As stated above, despite her allegations of social difficulties and concentration deficits, she remained somewhat social throughout the period at issue. She continued to attend weekly church and bible study classes. Further, she remained able to perform at least some tasks in excess of one to two steps, like driving, shopping in stores and preparing meals. During a November 2008 psychological consultative evaluation with Dr. Gessesse, [Plaintiff] was able to register 3 out of 3 items immediately, and 3 out of 3 items after 5 minutes. [Plaintiff] was able to state 4 digits forward and backward, and was able to do serial 7's. I find that the objective medical evidence does not support the level of symptomology that [Plaintiff] alleged and is inconsistent with [Plaintiff's] statements concerning the alleged intensity, persistence, and limiting effects of symptoms. [. . .]

After careful consideration of the evidence, I find that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms;

however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(AR 860-61) (some citations omitted).

Because ALJ Ball did not find that Plaintiff was malingering, the Court applies the "clear and convincing reasons" standard. See Burrell v. Colvin, 775 F.3d 1133, 1138-39 (9th Cir. 2014); Robbins, 466 F.3d at 883. And as noted, it is not enough for the ALJ to find the testimony inconsistent with objective medical evidence. Thus, here, the Court considers whether the ALJ properly discredited Plaintiff's statements based on their inconsistency with her daily activities.[6]

Remand is warranted on this basis. In particular, ALJ Ball mischaracterizes the nature of Plaintiff's daily activities, such as cleaning and shopping, to conclude that they are inconsistent with her alleged symptoms. Plaintiff's testimony and filings indicate, for the most part, that she carries out these activities slowly and infrequently, with assistance, frequent breaks, or substantial pain. As such, the duration and intensity of Plaintiff's activities provide

---

[6] To the extent that Defendant argues that this Court should affirm ALJ Ball's adverse credibility finding based on evidence that ALJ Ball did not discuss in support of that finding, this Court declines to do so. See Burrell, 775 F.3d at 1138-39; Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

very little evidence that she can secure and maintain employment or that her pain and limitations are not as severe as she suggests. The Ninth Circuit has disparaged such reasoning, stating as follows:

> [T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be "utterly incapacitated" in order to be disabled.

Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (finding "only a scintilla" of evidence supporting ALJ's adverse credibility finding where claimant was able to go grocery shopping with assistance, walk approximately an hour in the mall, get together with friends, play cards, swim, watch television, read, undergo physical therapy, and exercise at home); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (remarking that activities of daily living affect a claimant's credibility "[o]nly if the level of activity [is] inconsistent with the [c]laimant's claimed limitations" and finding that the ALJ erred by "not fully accounting for the context of materials or all parts of the testimony and reports," and in paraphrasing record material that was "not entirely accurate regarding the content or tone of the record").

Remand is also warranted for reconsideration of the statements made by Plaintiff's husband in two third-party Adult Function Reports in September 2008 and March 2009, which generally corroborated

Plaintiff's assertions. (AR 259-66, 289-96). For example, the September 2008 report reflected that Plaintiff needs some assistance to get dressed, bathe, and do chores; has difficulty sleeping; cannot bend over; drives "short distance[s]"; prepares "easy foods"; and attends meetings at church. (AR 259-66).

An ALJ must give germane, specific reasons for rejecting a lay witness's statements. See Carmickle v. Comm'r, 533 F.3d 1155, 1164 (9th Cir. 2008); Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006) (explaining that "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony"); Smolen, 80 F.3d at 1288. Here, ALJ Ball expressed the following reasoning for giving "partial weight" to the husband's statements:

> His statements are generally consistent with the subjective complaints already testified to and reported by [Plaintiff]. Yet, as explained elsewhere, there are good reasons for finding [Plaintiff's] subjective complaints to be less than fully consistent with the evidence of record as a whole. Accordingly, his statements are only partially consistent with the evidence of record as a whole for the same reasons. To the extent his statements suggest [Plaintiff] is unable to perform work at the level of substantial gainful activity, they are not supported by the objective clinical and diagnostic medical evidence that is discussed elsewhere that demonstrates [Plaintiff's] symptoms, although persistent, were adequately controlled at generally a moderate level with appropriate treatment

15

and are not consistent with the credible opinion of
                impartial medical expert Dr. Nafoosi.

(AR 861) (some citations omitted).

Although an ALJ may properly reject a lay witness's statements for their inconsistency with the medical evidence, <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1218 (9th Cir. 2005); <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001), ALJ Ball failed to articulate how Plaintiff's husband's statements are inconsistent with the medical evidence of record.

Accordingly, the Court finds that ALJ Ball improperly analyzed the statements of Plaintiff and her husband.

**B. The Court Cannot Conclude That The ALJ's Errors Were Harmless**

"[H]armless error principles apply in the Social Security . . . context." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing <u>Stout</u>, 454 F.3d at 1054). Generally, "an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" <u>Id.</u> (citing <u>Carmickle</u>, 533 F.3d at 1162).

The errors at issue here largely concern the ALJ's consideration of the statements made by Plaintiff and her husband about the limiting effects of Plaintiff's pain. These limiting effects are directly relevant to assessing Plaintiff's RFC, which in turn was central to the determination that there was work that she could

perform despite her limitations.  See also McCawley v. Astrue, 423 F. App'x 687, 689 (9th Cir. 2011) (noting that a claimant's RFC "may be the most critical finding contributing to the final . . . decision about disability") (quoting SSR 96—5p).  Because the Court cannot determine that ALJ Ball's errors are "inconsequential to the ultimate disability determination," the errors cannot be deemed harmless.  See Carmickle, 533 F.3d at 1162.

**C.  Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion.  Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). The Ninth Circuit has stated that a remand for benefits is warranted "only in 'rare circumstances.'"  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1100 (9th Cir. 2014) (quoting Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004)).  Such circumstances are present only where the following elements are satisfied: (1) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; (2) "the record has been fully developed, [and] there are [no] outstanding issues that must be resolved before a determination of disability can be made"; and (3) the record as a whole, with the relevant testimony or evidence credited as a matter of law, "leaves not the slightest uncertainty as to the outcome of [the] proceeding."  Id. at 1100-01 (9th Cir. 2014) (internal quotations and citations omitted).

Here, having determined that the ALJ failed to provide legally

sufficient reasons for rejecting the statements of Plaintiff and her husband, the Court proceeds to the second element and the question of "whether further administrative proceedings would be useful." See id. at 1103-04. To determine this, the Court "consider[s] whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether [Plaintiff's] entitlement to benefits is clear under the applicable legal rules." Id. (citing Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004)).

In this case, conflicts persist, as the record presents apparent inconsistencies between Plaintiff's statements and the objective medical evidence. For example, in contrast to Plaintiff's testimony, medical sources observed that Plaintiff on examination was "alert" and "in no acute distress," (AR 577, 794); that she had full muscle strength in her upper and lower extremities (AR 579-80); that she could squat without difficulty, (AR 581); and that she walked stably and "with greater flexion than she exhibited on specific lumbar [range of motion] testing." (AR 758; see also AR 795). Even aside from these apparent conflicts, it remains uncertain whether Plaintiff would be entitled to an award of benefits if her statements were credited in full. In particular, the record lacks sufficient VE testimony on the effects of Plaintiff's alleged symptoms on her ability to maintain gainful employment.

Thus, the Court remands for further proceedings so that the ALJ can reconsider the statements of Plaintiff and her husband, as well

as address and resolve any other issues, as necessary.[7]

**VI. CONCLUSION**

For the foregoing reasons, the decision of the Administrative Law Judge is VACATED, and the matter is REMANDED, without benefits, for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 19, 2017.

```
            _____/s/_____
            ALKA SAGAR
       UNITED STATES MAGISTRATE JUDGE
```

---

[7] The Court has not reached any issues other than those addressed herein, except as needed to conclude that further administrative proceedings are warranted.